UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SEAF ALMASHIAKHY,

                              Plaintiff,

v.

CHRISTOPHER WRAY, *et al.*,

                            Defendants.

**REPORT AND RECOMMENDATION**

Case No. 1:23-cv-841-JLS-JJM

---

       Before the court are defendants' motions pursuant to Fed. R. Civ. P. ("Rules") 12(b)(1), (5) and (6) to dismiss [9, 17, and 27][1] and plaintiff's motion to amend his complaint pursuant to Rule 15 [31], which have been referred to me by District Judge Sinatra for initial consideration [11]. Having reviewed the parties' submissions on each motion [9], [17, 19, 20, 21, 26] and [27, 29, 30], for the following reasons I recommend that the motions to dismiss be granted, and that plaintiff's motion [31] to amend his complaint be denied as moot, without prejudice to filing an amended complaint that addresses the deficiencies identified herein.

## BACKGROUND

       This is a civil rights action brought pursuant to 42 U.S.C. § 1983 for alleged violations of plaintiff's rights under the United States Constitution stemming from his alleged placement on the Department of Homeland Security's "no-fly list". Complaint [1] at 8-10. He alleges various violations of state and federal law. Id. at 10-12.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

Plaintiff is "an Iraq War Refugee and a naturalized US citizen." Id. at 1. He alleges that the Federal Bureau of Investigation ("FBI") recruited him to work as a "counter-terrorism informant", and that he did so for two years. Id. However, when he "refused to continue spying, the FBI fabricated false evidence against him in a scheme to coerce him to continue". Id. He alleges, *inter alia* , that "the FBI fabricated false evidence against him" and "shared that false evidence" with his friends and family". Id. He alleges that the FBI "conspired with other Federal and New York State officials" and with defendant United Airlines, Inc. ("United") to prevent him from traveling "in a further effort to coerce him into resuming his counter-terrorist work". Id. at 1-2.

He outlines three specific instances in which he was denied the ability to travel on domestic and international flights. Id. at 6, 7, 8. He also details issues he experienced while trying to cross the border back into the United States after visits to Canada, including being detained and held at gunpoint. Id. at 5, 7. He alleges that he was told by a United representative that he was on the "No-Fly List". Id. at 8. He alleges that he filed two Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP") complaints to contest his placement on the No-Fly List with the Transportation Security Administration ("TSA") (id. at 7, 8), but that the TSA "failed to follow their own administrative redress rules" when he tried to clear his name in order to travel (id. at 2).

Plaintiff's Complaint asserts claims against Christopher Wray, FBI Director; FBI Supervisor #1; and FBI Agents #1, #2. #3, #4, and #5;  David Pekoske, TSA Administrator; TSA Officers #1 and #2; Airport Police Officers #1, #2, #3, and #4; United employee Jane Doe; and United. Id. at 1. He incorporates seven causes of action into his Complaint:

1. Conspiracy to Violate Rights: this claim is asserted against all the defendants, for
   violation of his "procedural due process rights and his right to travel freely, based solely

on his Arabic heritage, on his Muslim religion, and/or his national Iraqi origin" in violation of 42 U.S.C. §1985(3) and New York State Civil Rights Act Article 4 §40-c. Id. at 8-9.

2. Deprivation of Rights Under Color of Law: this claim asserts "Bivens claims . . . against Director of the FBI, Christopher Wray, FBI Agents ##1-5, TSA agents ##1 & 2, and Airport Police ##1-4, both in their official capacities and as individuals" for violations of his "procedural Due Process rights under the Fourth and the Fourteenth Amendments to the USA Constitution" in violation of 42 U.S.C. §1983. Id. at 9-10.

3. Failure to Supervise: this claim is asserted against FBI Director Christopher Wray concerning his failure to train, supervise, and/or discipline FBI Agents ##1-5. Id. at 10.

4. False Arrest: this claim is asserted against FBI Agents ##1-4 for using false evidence to coerce him into acting as an informant and for conveying it to the US Border Patrol, which resulted in him being handcuffed, held at gunpoint, and being held for interrogation. Id. at 10-11.

5. Violation of the Religious Freedom Restoration Act "(RFRA)": this claim asserts that the actions of the "defendant FBI agents" resulting in an inability to travel freely are impairing his ability to travel to Mecca and "preventing him from practicing his religious faith unless he agrees to act as a spy for them". Id. at 11. He asks the court "to compel the FBI and/or the TSA and any and all other agencies . . . to remove any and all impediments to his ability to travel freely". Id.

6. Violation of the Privacy Act: this claim alleges that "unknown FBI Agents disclosed to [plaintiff's] friends and family members the false information that they had found his fingerprints on [a] terrorist device" and that the FBI and TSA have used that information to prevent him from traveling, in violation of the U.S. Privacy Act. Id. at 11-12.

7. Declaratory and Injunctive Relief: plaintiff's final cause of action asserts that 49 U.S.C. §114(h)(2) and (3)(A) of the Transportation Security Act is arbitrary and capricious as written and as applied to plaintiff. He seeks a declaration that those statutory provision are "void for vagueness" and "an injunction, prohibiting the defendants from restricting [plaintiff's] travel". Id. at 12-13.

Airport Police Officers ##1-4 moved to dismiss the Complaint against them [9] pursuant to Rule 12(b)(5) for insufficient service of process. By Text Order dated November 16, 2023 [12], I required plaintiff to respond to this motion on or before December 8, 2023, but he failed to respond. Defendants Wray and Pekoske moved to dismiss the complaint against them [17] in both their official and individual capacities pursuant to Rules 12(b)(1) and 12(b)(6) on

December 11, 2023.  Plaintiff responded to their motion on December 28, 2023 [19] and January 2, 2024 [20] and filed a sur-reply with the court's permission on January 19, 2024 [26]. Defendant United Airlines moved to dismiss the Complaint pursuant to Rule 12(b)(6) [27] on February 5, 2024.  Plaintiff responded to its motion on February 20, 2024 [29].

## DISCUSSION

**A.     The Standard Governing a Rule 12(b)(1) Motion to Dismiss**

To survive a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue". Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011). "Because the judicial power of the United States extends only to the resolution of cases and controversies, U.S. Const. art III, § 2, courts have always required that a litigant have 'standing' to challenge the action sought to be adjudicated." Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1095 (2d Cir. 1997).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. . . . [J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it". Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).  To the extent that a defendant's motion places jurisdictional facts in dispute, the court may consider evidence outside the pleadings. See Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  By contrast, when a defendant makes a facial challenge to standing, courts are limited to consideration of the allegations of the complaint, and any documents either incorporated by reference into, or attached as exhibits to, the complaint. See MSP Recovery

<u>Claims, Series LLC v. New York Central Mutual Fires Insurance Co.</u>, 2019 WL 4222654, *2 n.2 (N.D.N.Y. 2019).

**B.    The Standard Governing a Rule 12(b)(5) Motion to Dismiss**

"In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction". <u>Fantozzi v. City of New York</u>, 343 F.R.D. 19, 25 (S.D.N.Y. 2022).  "The plaintiff bears the burden of establishing that service was sufficient."  <u>Felton v. Monroe Community College</u>, 528 F.Supp.3d 122, 132 (W.D.N.Y. 2021).

**C.    The Standard Governing a Rule 12(b)(6) Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>  *See also* <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009) (*citing* <u>Iqbal</u>, <u>supra</u>).

In deciding whether to dismiss a complaint under Rule 12(b)(6), this court "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents in the complaint by reference". <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007).  I must "assume that all well-pleaded factual allegations in the complaint are true unless they are contradicted by more specific allegations or documentary evidence." <u>Vengalottore v. Cornell University</u>, 36 F.4th 87, 112 (2d Cir. 2022) (internal alterations omitted).  That rule is "inapplicable to legal conclusions". <u>Iqbal</u>, 556 U.S. at 678 (2009).

### D.    Plaintiff Has Conceded Many of Defendants' Arguments by Failing to Respond

At the outset, plaintiff has abandoned several of his claims, or conceded that dismissal is appropriate for several causes of action, by failing to respond to Airport Police Officers #1, #2, #3, and #4's motion, or by failing to dispute certain of the other movants' arguments.  "This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." <u>Kabrovski v. City of Rochester</u>, 149 F.Supp.3d 413, 422 (W.D.N.Y. 2015) (citation omitted).  Accordingly, when a defendant's motion to dismiss raises arguments that plaintiff fails to address, plaintiff is "deemed to have conceded the point". <u>Id.</u>

I address below each of the plaintiff's abandoned or conceded claims.  I then address the remaining claims raised by defendants' motions to which plaintiff has responded.

### 1.    Unopposed Arguments by Airport Police Officers ##1-4

I recommend that this court dismiss plaintiff's claims against Airport Police Officers # 1, 2, 3, and 4.  These officers, through attorney Vicky-Marie J. Brunette, the Deputy

General Counsel for the Niagara Frontier Transportation Authority, moved to dismiss this action against them for insufficient service of process pursuant to Fed. R. Civ. P. ("Rule") 12(b)(5). Notice of Motion [9]; Brunette Declaration [9-1], ¶¶ 2, 7. Plaintiff did not respond to this motion.

"In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction". Fantozzi v. City of New York, 343 F.R.D. 19, 25 (S.D.N.Y. 2022). "The plaintiff bears the burden of establishing that service was sufficient." Felton v. Monroe Community College, 528 F.Supp.3d 122, 132 (W.D.N.Y. 2021).

The manner in which the Summonses and Complaints for these defendants were received is detailed in the Affidavit of Jordan Lambert [9-2]. Mr. Lambert is a Lieutenant with the Transit Authority Police Department and employed by the Niagara Frontier Transportation Authority. Lambert Affidavit [9-2], ¶ 1. While at work on October 23, 2023, he received an envelope from an unidentified man that contained summonses and complaints directed to Airport Police Officers # 1, 2, 3, and 4. Id., ¶¶ 2-4. After searching for the police report concerning plaintiff, he determined that he was not involved in the incident referenced in the complaint. Id., ¶ 5 and Exhibit C, Police Report [9-5]. He placed the envelope in his Captain's office. Id., ¶ 4. The Captain then forwarded the summonses and complaints to Ms. Brunette. Brunette Declaration [9-1], ¶ 6.

Service of a summons and complaint is governed by Rule 4, which provides several options for service upon an individual:

> "[A]n individual . . . may be served in a judicial district of the
> United States by:

> (1) following state law for serving a summons in action brought in
>     courts of general jurisdiction in the state where the district
>     court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to
>>     the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual
>>     place of abode with someone of suitable age and discretion
>>     who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by
>>     appointment or by law to receive service of process."

Rule 4(e). Plaintiff did not serve defendants in accordance with subsection (2). They were "not personally served", nor were the summonses and complaints "served at the officers' residences" or "on an authorized agent". Memorandum of Law [9-6] at 7. Service under subsection (1) in New York requires compliance with section 308 of New York's Civil Practice Law and Rules ("CPLR"). CPLR 308 provides a number of methods for personal service. As these defendants were not served personally or at their residence, the most relevant provision involves service at a person's place of business:

> "Personal service upon a natural person shall be made by any of
> the following methods:
> . . .
>
> 2. by delivering the summons within the state to a person of
> suitable age and discretion at the actual place of business, dwelling
> place or usual place of abode of the person to be served and by
> either mailing the summons to the person to be served at his or her
> last known residence or by mailing the summons by first class mail
> to the person to be served at his or her actual place of business in
> an envelope bearing the legend 'personal and confidential' and not
> indicating on the outside thereof, by return address or otherwise,
> that the communication is from an attorney or concerns an action
> against the person to be served, such delivery and mailing to be
> effected within twenty days of each other; proof of such service
> shall be filed with the clerk of the court designated in the summons

within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law"

CPLR §308.  Although it appears that the summonses and complaints were delivered to a "person of suitable age and discretion" at these defendants' "actual place of business", it does not appear from the papers that any subsequent mailing took place.  Memorandum of Law [9-6] at 7.  Nor is there evidence on the docket that these defendants were properly served.  Because no proof of service was filed, service under this section is not complete even if the papers were timely mailed.

Finally, since plaintiff has not responded to this motion, he has not disputed that he failed to follow Rule 4 and CPLR § 308.  Accordingly, plaintiff has not met his burden to establish that service was sufficient.  Felton, 528 F.Supp.3d at 132.  I therefore recommend that the motion of Officers ##1-4 be granted pursuant to Rule 12(b)(5) for insufficient service of process and that this matter be dismissed as to them, without prejudice.

### 2.  Unopposed Arguments by Defendants Wray and Pekoske

Plaintiff sues defendants Christopher Wray and David Pekoske in their official capacities as Director of the FBI and TSA Administrator, respectively, and in their individual capacities.  *See* Complaint [1] at 3.  They move to dismiss the Complaint for lack of subject matter jurisdiction, and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) [17].  Among their arguments are that plaintiff failed to plausibly allege a violation of the Religious

Freedom Restoration Act ("RFRA") and the Privacy Act, and that plaintiff's apparent

Constitutional challenges to Section 114 of the Aviation & Transportation Security Act

("ATSA") are without merit.  *See* Memorandum of Law [17-1] at 27-33.

        In his responses, plaintiff does not appear to address any of these arguments. *See*

Plaintiff's Response [19, 20].  In their reply, Wray and Pekoske assert that plaintiff did not

respond to their arguments in support of dismissal of these claims.  Reply [21] at 10-12.  Plaintiff

filed a sur-reply with the court's permission. *See* Text Order filed January 11, 2024 [23].

Plaintiff's sur-reply states in its entirety, "[t]here is no factual nor legal basis for the motion to

dismiss and the motion should be denied in its entirety."  Sur-reply [26].

        There may be responsive arguments as to why defendants' arguments are

incorrect, but they have not been offered by plaintiff, and "it is not this Court's responsibility to

raise and make counsel's arguments for them".  <u>Flores v. Tryon</u>, 2017 WL 3705124, *3 n. 4

(W.D.N.Y. 2017).  *See also* <u>Dickerson v. United States Department of Veterans Affairs</u>, 804

F.Supp.2d 1279, 1286 (M.D. Ga. 2011) ("[i]t is the responsibility of the movant to identify his

arguments, not the responsibility of the Court to imagine and apply them without prompting");

<u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[i]t is not enough merely to mention a

possible argument in the most skeletal way, leaving the court to do counsel's work, create the

ossature for the argument, and put flesh on its bones").

        Plaintiff does not contest in his sur-reply that he failed to respond to defendants'

arguments concerning the RFRA, the Privacy Act, or the Constitutionality of Section 114 of the

Transportation Security Act.  Nor does he argue that these claims have been adequately pleaded.

"[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial

opposition that relevant claims or defenses that are not defended have been abandoned." Jackson v. Federal Express, 766 F.3d 189, 198 (2d Cir. 2014); *see also* Kabrovski, supra.

      Accordingly, I recommend that defendants Wray and Pekoske's motion to dismiss these claims be granted. The remaining claims asserted against them are addressed below.

### 3. Unopposed Arguments by Defendant United

      Plaintiff asserts claims against defendant United for, *inter alia*, conspiracy to discriminate against him and for violations of New York's Civil Rights Law §40-c(2). Complaint [1] at 8-9. United moves to dismiss the claims against it for failure to state a cause of action pursuant to Rule 12(b)(6). Notice of Motion [27] at 1. Plaintiff's first cause of action alleges that United participated in a conspiracy with the other defendants "to deprive [him] of his procedural due process rights and his right to travel freely . . . in violation of 42 U.S.C. § 1985(3)" and of "New York State's Civil Rights Act Article 4 §40-c(2)". Complaint [1], ¶¶ 35, 36. United argues that, prior to making a claim under NY Civ.Rts. §40-c, plaintiff was required to provide notice to the Attorney General pursuant to §40-d. United's Memorandum of Law [27-1] at 9. Plaintiff does not address this argument in his papers. *See* Plaintiff's Response [29]; *see also* Reply [30] at 6.

      Defendant further asserts that plaintiff's third and fourth causes of action for failure to supervise and false arrest "appear to be administrative claims against FBI Director Christopher Wray and unnamed FBI agents". United's Memorandum of Law [27-1] at 11. Plaintiff does not appear to contest this assertion in his response, or make any attempt to

demonstrate how his Complaint ties United or its employees to these claims.  Plaintiff's Response [29].

        With respect to plaintiff's fifth cause of action, concerning alleged violations of the RFRA, plaintiff "only names the Defendant FBI Agents".  United Memorandum of Law [27-1] at 11-12.  United also argues that plaintiff's sixth cause of action, for violations of the Privacy Act, does not implicate United because "the Privacy Act does not provide a basis for a cause of action against private companies like United".  Id. at 12.  With respect to plaintiff's seventh cause of action, for an "injunction, prohibiting the defendants from restricting the Plaintiff[']s travel", United argues that plaintiff "fails to assert any facts upon which this Court may issue an injunction".  Id. at 13.  Plaintiff does not contest any of these assertions in his response, or make any arguments in favor of saving these causes of action against United.  *See* Plaintiff's Response [29].

        Plaintiff's three-page response focuses on "three (3) occasions defendant [United] sold airline tickets to the [plaintiff] and they then refused to allow him to fly on the plane".  Plaintiff's Response [29] at 1.  Plaintiff argues, "[t]he fact that the TSA and/or the FBI would tell [United] who then informed their low level employee at the check in counter that the Complainant was on this secret "No Fly" list is a fair indication that these defendants were acting in concert to deprive the Complainant of his Constitutional rights".  Plaintiff's Response [29] at 2.

        As noted above, "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."  Jackson, supra; *see also* Kabrovski, supra.  Further, "failure to comply with the notice provisions of New York Civil Rights Law Article 4 is fatal to a private action under

that Article." <u>Feacher v. Intercontinental Hotels Group</u>, 563 F. Supp.2d 389, 407 (N.D.N.Y. 2008).¹

Accordingly, I recommend that this court dismiss plaintiff's claims against United except to the extent that they assert conspiracy to violate plaintiff's constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1985, which I address below.

I now address, in turn, the remaining portions of Wray and Pekoske's and United's motions to dismiss.

**E.    Remaining Claims against Wray and Pekoske in their Official Capacity**

At the outset, these defendants note that "because no federal defendant has been served in his or her individual capacity, it is assumed for this Motion that these cases of action are asserted against these employees in their official capacities". Memorandum of Law [17-1] at 17. In his response, plaintiff does not dispute this point. As noted above, "[t]he plaintiff bears the burden of establishing that service was sufficient." <u>Felton v. Monroe Community College</u>, 528 F.Supp.3d 122, 132 (W.D.N.Y. 2021). In his Response, however, plaintiff acknowledges the lack of service:¹

> "The Plaintiff requests leave to file a separate motion to amend the
> Complaint and for an extension of time to complete service upon
> all parties in their official and individual capacities. There are 16
> separate defendants in this case. Fourteen of these defendants need
> to be served in both their individual capacities and their official
> capacities. At this time Plaintiff has only properly executed
> service upon the two civilian parties and upon the two moving
> parties, Wray and Pekoske, in their official capacities."

Plaintiff's Response [19, 20] at 2.

Rule 4(m) states:

"If a defendant is not served within 90 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

Plaintiff filed the Complaint on August 15, 2023. *See* Complaint [1]. More than 90 days have passed. Plaintiff, in his response, "requests leave to file a separate motion to amend the Complaint and for an extension of time to complete service upon all parties in their official and individual capacities". Aside from his motion to amend the Complaint [31], however, no such motion is before this court. I therefore decline to act or make any recommendation concerning such relief until such a request is properly before me. Accordingly, I recommend that Wray's and Pekoske's motion to dismiss the Complaint against them in their individual capacities be granted.

### 1.    Civil Rights Claims (First and Second Causes of Action) as to Wray and Pekoske in Their Official Capacity

As noted above, plaintiff did not contest that these defendants are named in their official capacities. "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." Robinson v Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

Plaintiff's first cause of action, "Conspiracy to Violate Rights", alleges that all of the defendants "have abused their authority and/or have acted outside any lawful authority by conspiring and acting in concert to deprive [him] of his procedural due process rights and his right to travel freely . . . all in violation of 42 U.S.C. § 1985(3)". Complaint [1] at 8-9. His second cause of action, "Deprivation of Rights Under Color of Law", alleges that Wray and

Pekoske, among others, "violated [plaintiff's] procedural Due Process rights under the Fourth and the Fourteenth Amendments to the US Constitution . . . pursuant to 42 USC §1983 are liable to the defendant because they deprived [plaintiff] of his rights in concert with state and local government officials".  Complaint [1] at 9-10.

   Wray and Pekoske argue that this court lacks subject matter jurisdiction for these claims.  Memorandum of Law [17-1] at 18.  Plaintiff responds that defendants are not immune "because they conspired with state officials to violate the Plaintiff's constitutional rights", but does not cite to any specific allegations in the Complaint that assert such facts.  Plaintiff's Response [19, 20] at 2.  Defendants assert in their reply that the Complaint failed to "allege any facts supporting an agreement and concerted action between federal and state officials to violate Plaintiff's civil rights".  Reply [21] at 6.  Plaintiff does not, in his Sur-Reply, identify any specific allegations in the Complaint that make such allegations.

   I agree with defendants that this cause of action should be dismissed.  "Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir 1994).  "The U.S. government has not waived its sovereign immunity for claims under Sections 1981 to 1986 of Title 42." Jones v. National Communication and Surveillance Networks, 409 F.Supp.2d 456, 466 (S.D.N.Y. 2006).

   I recommend dismissal of plaintiff's first and second claims against these defendants in their official capacities.  Plaintiff argues that "federal officials are subject to section 1983 liability when sued in their official capacity where they have acted under color of

state law, for example in conspiracy with state officials".  Response [20] at 2, *citing* <u>Dalal v.</u>

<u>Molinelli</u>, 2021 WL 1208901, *5 (D.N.J. 2021).  However, in order for such claims to survive a

motion to dismiss:

> "[A] plaintiff must allege facts that support the existence of the
> elements of conspiracy:  agreement and concerted action. . . . Such
> allegations must be specific and must address, for example, the
> time the agreement was made, the period of the conspiracy, the
> exact parties to the agreement, and the object of the conspiracy."

<u>Id.</u> (internal citations omitted).

Here, plaintiff has failed to identify any such specific allegations in his complaint.

Accordingly, I recommend that Wray's and Pekoske's motion to dismiss the first and second

causes of action of the Complaint be granted.


**2.      Claims for Failure to Supervise and False Arrest (Third and Fourth
         Causes of Action as to Wray and Pekoske in Their Official Capacity**

Plaintiff's third and fourth causes of action are for failure to supervise and false

arrest, respectively.  With respect to his failure to supervise claim, plaintiff alleges that defendant

Wray:

> "[B]y his intentional and/or reckless disregard and wanton
> indifference to the misconduct of defendant FBI Agents #1, #2, #3,
> #4, and #5, and by the Director's failure to train, failure to
> supervise and/or failure to discipline those Agents' conduct as
> described above, has subjected [plaintiff] [to] general and specific
> damages to be determined at trial".

Complaint [1] at 44.  In the fourth cause of action, defendant alleges:

> "Defendant FBI Agents #1-4 knew the allegations and the
> evidence against [plaintiff] were false and they used it to threaten
> and coerce him into acting as an informant for them anyway; this
> false information was conveyed to the US Border Patrol and

> directly resulted in [plaintiff's] false arrest and to his being
> handcuffed at gunpoint and to his being held for interrogation."

Id. at 11.

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346, 2401, *et seq.*,

"provides a limited waiver of sovereign immunity".  Salomone v. United States, 618 F.Supp.3d

146, 150 (S.D.N.Y. 2022).  The FTCA provides:

> "[T]he district courts . . . shall have exclusive jurisdiction of civil
> actions on claims against the United States . . . for injury . . .
> caused by the negligent or wrongful act or omission of any
> employee of the Government while acting within the scope of his
> office or employment, under circumstances where the United
> States, if a private person, would be liable to the claimant in
> accordance with the law of the place where the act or omission
> occurred".

28 U.S.C. § 1346(b)(2) (emphasis added).  Plaintiff does not contest that these claims were

brought pursuant to the FTCA.  *See* Plaintiff's Response [19, 20] at 3 ("[t]his Court has exclusive

jurisdiction over FTCA claims", and continuing to discuss his "[f]ailure to supervise" and

"[f]alse [a]rrest" claims).

### a.  Negligent Supervision

Defendants argue that this claim must be dismissed because the elements of a

claim for negligent supervision bring such a claim outside the limited waiver of sovereign

immunity provided by the FTCA.  *See* Memorandum of Law [17-1] at 19, 22.  I agree.

Under New York law (*i.e.* the "place where the act or omission occurred"), to

"maintain a claim . . . for the negligent hiring, training, and retention of a tortfeasor . . . a plaintiff

must show that the employee acted outside the scope of her employment".  Velez v. City of New

York, 730 F.3d 128, 136-37 (2d Cir. 2013); *see also* Bryant v. Ciminelli, 267 F.Supp.3d 467, 478

(W.D.N.Y. 2017).  Therefore, to the extent that plaintiff alleges that government employees

acted within the scope of their employment, he has not stated a claim for negligent supervision or hiring. And to the extent that plaintiff alleges that government employees acted outside the scope of their employment, he has not stated a claim that falls within the waiver of sovereign immunity provided by the FTCA.

Either way, plaintiff's claim must be dismissed. Either it fails to state a claim for negligent supervision, or it falls outside of the court's jurisdiction under the FTCA:

> "The plaintiff also brings claims for negligent training and negligent supervision against the Government under the FTCA. However, New York law precludes a claim for negligent training or negligent supervision against an employer for acts taken within the scope of the employee's employment. . . . This principle bars negligent training and supervision claims brought pursuant to the FTCA because New York state law does not recognize such claims."

Salamone, 618 F.Supp.3d at 153.

Accordingly, I recommend that this court grant defendants' motion to dismiss plaintiff's third cause of action for negligent supervision.

### b. False Arrest

Defendants Wray and Pekoske argue that plaintiff's claim for false arrest is time-barred. Memorandum of Law [17-1] at 22-23. "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues". 28 U.S.C. §2401(b). To the extent that a defendant's motion places jurisdictional facts in dispute, the court may consider evidence outside the pleadings. *See* Amidax Trading, 671 F.3d at 145.

Defendants argue that this claim "must be dismissed for failing to satisfy the FTCA's statute of limitations". Memorandum of Law [17-1] at 22. They point to allegations in

the complaint indicating that the incidents complained of occurred on or before January 20, 2017 and on July 23, 2019.  Id. at 23, *citing* Complaint [1], ¶¶ 18, 27.  They also point to plaintiff's November 5, 2021 administrative claim to the FBI complaining of these incidents.  *See* Exhibit 1 to the Declaration of Kristin L. Ellis ("Ellis Declaration") [17-2].

In his response, plaintiff challenges neither the dates of the incidents alleged, nor that the November 5, 2021 administrative claim attached to the Ellis Declaration was the first claim he made to the FBI concerning those incidents.  *See* Plaintiff's Response [19, 20] at 3-4. Instead, plaintiff asserts that he was arrested at the border a third time, on November 27, 2023 when he was returning home from Canada.  Id.  He states that "[s]pecifics of this allegation will be included in the Amended Complaint and/or a Supplemental Complaint, so the False Arrest Cause of Action is timely commenced."  Id.

Because plaintiff does not contest that the November 5, 2021 claim was his first claim submitted to the FBI concerning these matters, I consider that document as evidence of the date that plaintiff "presented [his claim] in writing to the appropriate Federal agency".  28 U.S.C. §2401(b).  As noted by defendants, November 5, 2021 is greater than two years from the date of the most recent incident complained of: July 23, 2019.  Accordingly, plaintiff has failed to satisfy his burden to affirmatively show that subject matter jurisdiction exists for this claim.  Morrison, 547 F.3d at 170 ("[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. . . . jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it").  Any action related to the alleged incidents that occurred on or before January 20, 2017 and on July 23, 2019 are time barred.  Any incident occurring on November 27, 2023 cannot be considered until it is properly before the court.

Accordingly, I recommend that defendants' Wray's and Pekoske's motion to dismiss plaintiff's fourth cause of action for false arrest be granted.

### 3.     Claim for Declaratory and Injunctive Relief  (Seventh Cause of Action) as to Wray and Pekoske in Their Official Capacity

In his seventh cause of action, plaintiff's remaining claim seeks an injunction "prohibiting the defendants from restricting" his travel.  Complaint [1], ¶¶ 62, 63.  He alleges that 49 U.S.C. §§114(h)(2) and (3)(A) "as it is being applied against [him] . . . allows the FBI/TSA defendants herein to make bald accusations with no standard factual foundation, to deprive [him] . . . of his right to travel".  Id., ¶¶ 59, 60.  Defendant interprets this claim as a challenge to "the statutory standard by which the Government determines that an individual poses a 'threat to civil aviation or national security'", "TSA's implementation of Section 114 and DHS TRIP", and "his status on the No Fly List".  Memorandum of Law [17-1] at 23-24; *citing* Complaint [1], ¶¶ 59, 60, and 63. Defendant argues that these claims should be dismissed for lack of subject matter jurisdiction because they have not been brought in the correct court (id. at 24), or because plaintiff has failed to exhaust his administrative remedies (id. at 26-27).  Plaintiff concedes that he is not contesting a final order on his Traveler Redress Application, because the TSA has not yet issued one.  Plaintiff's Response [19, 20] at 4.  He states that the gravamen of his claim "is that the TSA and the FBI violate their own processes and procedures in order to intentionally violate [his] religious freedom and his right to privacy along with other rights".  Id. He also claims this cause of action alleges "civil rights complaints", which this court is permitted to hear under 49 U.S.C. § 46110 and that he was not required to exhaust his remedies under TSA's Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP") process prior to bringing this claim.  Id. at 5-6.

49 U.S.C. §114(h) provides that the Administrator of the Transportation Security

Administration ("TSA") shall:

> "(2) establish procedures for notifying the Administrator of the
> Federal Aviation Administration, appropriate State and local law
> enforcement officials, and airport or airline security officers of the
> identity of individuals known to pose, or suspected of posing, a
> risk of air piracy or terrorism or a threat to airline or passenger
> safety;
>
> (3) In consultation with other appropriate Federal agencies and air
>       carriers, establish policies and procedures requiring air carriers-
>
>> (A) to use information from government agencies to
>>       identify individuals on passenger lists who may be a
>>       threat to civil aviation or national security; and
>>
>> (B) if such an individual is identified, notify appropriate
>>       law enforcement agencies, prevent the individual from
>>       boarding an aircraft, or take other appropriate action
>>       with respect to that individual".

49 U.S.C. §114(h)(2) and (3).  Judicial review of decisions of the Administrator of the TSA are

governed by Section 46110:

> "[A] person disclosing a substantial interest in an order issued by
> the . . . Administrator of the [TSA] with respect to security duties
> and powers designated to be carried out by the Administrator of
> the [TSA] . . . may apply for review of the order by filing a petition
> for review . . . in the court of appeals of the United States for the
> circuit in which the person resides . . . The petition must be filed
> not later than 60 days after the order is issued."

49 U.S.C. §46110(a).

To the extent that this cause of action challenges either the redress procedure

available to individuals to challenge their placement on the No Fly List, or its procedures in

placing individuals on the list, or for violations of plaintiff's procedural or substantive due

process rights, this court lacks jurisdiction to hear such claims under 49 U.S.C. §46110(a).  *See*

Kashem v. Barr, 941 F.3d 358 (9th Cir. 2019) (under the current DHS TRIP procedure, §46110

grants the courts of appeals, rather than the district courts, exclusive jurisdiction over the

plaintiff's substantive due process claims"); Magassa v. Mayorkas, 52 F.4th 1156, 1166-69 (9th

Cir. 2022) (outlining precedent applying §46110 to "at least some facial constitutional challenges

to TSA procedures", including the "Security Directive that required airlines to check passenger

names against the No-Fly List" and TSA's "policies and procedures implementing the No-Fly

List" and holding that §46110 applied to plaintiff's procedural and substantive due process

claims involving the TSA redress procedures at issue there).

Plaintiff cites Kovac v. Wray, 363 F.Supp.3d 721 (N.D. Tex. 2019) to support his

statement that "§46110 does not divest this Court of its original jurisdiction to hear civil rights

complaints, nor does §46110 require Plaintiffs to exhaust administrative remedies prior to filing

a Complaint".  Plaintiff's Response [20] at 5.  The Court in Kovac relied on other D.C. Circuit

and Ninth Circuit cases to support its holding that "section 46110 does not bar its consideration

of Plaintiffs' challenge to the adequacy of the redress process under the circumstances of this

case, in which Plaintiffs are also raising broad constitutional challenges to their continued

inclusion in the [Terrorism Screening Database]".  Kovac, 363 F.Supp.3d at 743 (citing Ege v.

United States Department of Homeland Security, 784 F.3d 791 (D.C. Cir. 2015) and Latif v.

Holder, 686 F.3d 1122 (9th Cir. 2012)).  Concluding that it had jurisdiction to consider plaintiffs'

claims, the court there went on to address the defendants' arguments concerning ripeness and

exhaustion of administrative remedies.

However, both the D.C. Circuit and the 9th Circuit have more recently explained

that their decisions concerning jurisdiction under §46110 in Ege, supra and Latif, supra were

based on former language in the redress procedures available to travelers that placed authority in

the Terrorist Screening Center ("TSC"), which is not subject to §46110, to issue orders

-22-

concluding the redress process, rather than in the TSA, which is subject to §46110.  Under

current procedures, "the TSA Administrator is solely responsible for issuing a final order

maintaining a traveler on the No Fly List . . . Thus, we hold that §46110 grants the courts of

appeals, rather than the district courts, exclusive jurisdiction over the plaintiffs' substantive due

process claims".  Kashem, 941 F.3d at 391 (contrasting its holding with its former holding in

Latif, 686 F.3d at 1128-29).

      The D.C. Circuit similarly repudiated its holding in Ege, supra, when confronted

with a similar claim arising under the TSA's revised procedures:

> "Previously, when the TSA lacked authority to issue these types of
> orders, we held that petitions challenging No Fly List
> determinations presented no redressable injury because we did not
> have the authority under 49 U.S.C. §46110 to set those orders
> aside.  *See* Ege v. U.S. Dep't of Homeland Sec., 784 F.3d 791, 793
> (D.C. Cir. 2015).  Under the TSA's current procedures, however,
> the TSA Administrator is tasked with 'issuing a final order
> maintaining' or 'removing' a traveler from the No Fly List.  . . . *see
> also* Kashem v. Barr, 941 F.3d 358, 391 (9th Cir. 2019) (observing
> this).  Because the TSA Administrator now has the authority to
> issue No Fly List determinations, we have jurisdiction to review
> Busic's petition."

Busic, 62 F.4th at 549 (internal alterations omitted).

      Because both of the cases relied upon by the Court in Kovac have been

overturned due to the change in TSA's procedures, it is not persuasive.  Further, plaintiff cites no

other case, statute, or regulation to support his contention that this court retains jurisdiction over

any claim asserted in his seventh cause of action.

      Accordingly, I recommend that this court grant defendants' motion to dismiss the

seventh cause of action asserted against them for lack of jurisdiction.

### F.    Remaining Claims Against United

Plaintiff's first and second causes of action assert claims against United for

conspiracy with other defendants to violate his constitutional rights in violation of 42 U.S.C.

§§1983 and 1985.  His first cause of action alleges:

> "All the above-named defendants have abused their authority
> and/or have acted outside any lawful authority by conspiring and
> acting in concert to deprive [plaintiff] of his procedural due
> process rights and his right to travel freely, based solely on his
> Arabic heritage, on his Muslim religion, and/or his national Iraqi
> origin, all in violation of 42 U.S.C. §1985(3)".

Complaint [1], ¶ 35.  It is not clear whether plaintiff's second cause of action intends to make

allegations against United, but does reference his inability to travel:

> "Bivens claims by the plaintiff against Director of the FBI,
> Christopher Wray, FBI Agents #1-#5, TSA agents #1 & #2, and
> Airport Police #1-#4, both in their official capacities and as
> individuals, for violat[ing] [plaintiff's] procedural Due Process
> rights under the Fourth and the Fourteenth Amendment to the US
> Constitution by fabricating evidence and knowingly using false
> evidence against him in order to deprive of the right to travel freely
> while denying him a fair opportunity to confront the evidence and
> the witnesses against him; pursuant to 42 USC §1983 are liable to
> the defendant because they deprived [plaintiff] of his rights in
> concert with state and local government officials, under color of
> law, intentionally and/or with reckless disregard for the accuracy
> of the allegations against him".

Complaint [1], ¶ 40.

United argues that plaintiff's complaint fails to state any cause of action against it

under §1985 because: 1) it is time-barred; and 2) it fails to assert facts sufficient to satisfy the

elements of a §1985 claim for conspiracy.  Memorandum of Law [27-1] at 7-8.  It argues that

plaintiff similarly fails to state a claim against it under §1983 because plaintiff "has not alleged

any facts supporting a conspiracy between United and any of the foregoing public actors.  Id. at

11.

Plaintiff responds that it is "a fairly reasonable inference that there was a conspiracy afoot and that [United] was a party to that conspiracy" based upon the "fact that the TSA and/or the FBI would tell [United] who then informed their low level employee at the check in counter that the [plaintiff] was on this secret 'No Fly' list". Plaintiff's Response [29] at 2. He argues further that his allegation that United "would call out the dogs on a person, based merely on a phone call, without some kind of legitimate documentation is further reason to infer that [United] was a willing conspirator acting with reckless disregard for the rights and the safety of the [plaintiff]". Id.

As an initial matter, I agree with United that plaintiff's §1985 and §1983 claims, or a portion of them, are time barred. "The statute of limitations for actions brought pursuant to §§ 1983 and 1985 is three years." Paige v. Police Department of the City of Schenectady, 364 F.3d 197, 199 n.2 (2d Cir. 2001).

Plaintiff asserts in his Response that he "alleges that on three (3) occasions defendant [United] sold airline tickets to the Complainant and they then refused to allow him to fly on the plane." Plaintiff's Response [29] at 1. The first occasion was on May 23, 2017. Id. With respect to that incident, plaintiff alleged in his Complaint that "[o]n May 23, 2017, [plaintiff] was detained by Homeland Security (TSA) and US Customs and Border Protection at the Buffalo airport when he was trying to travel to Iraq to visit his mother. He called Agent #3 on the phone and the agent came to the airport and told [plaintiff] that he could only travel if he takes a lie detector test". Complaint [1], ¶23. Plaintiff filed his Complaint on August 15, 2023, more than six years after this incident. To the extent that plaintiff's allegations in his first and second cause of action refer to the 2017 incident, notwithstanding that United is not identified in the Complaint with respect to this incident, his allegations are time-barred.

Plaintiff identifies in his Response two additional incidents that he alleges satisfy

his pleading burden.  Those incidents occurred on January 24, 2021 and June 4, 2023.  Plaintiff's

Response [29] at 1-2.  With respect to the January 24, 2021 incident, he alleges:

> "29.  On January 24, 2021, [plaintiff] purchased a United Airlines
> ticket to Baghdad via Washington DC.  When he arrived at the
> Buffalo airport the United Airlines lady at the check-in counter
> called the United Airlines office and two Airport Police Officers
> (#1 & #2) confronted [plaintiff], one with a dog, along with an FBI
> Agent identified as Agent "Daily" (Agent #5).  [Plaintiff] showed
> Agent #5 the DHS TRIP letter dated 2/12/2020, which states that
> his Traveler Redress Application had been closed.  Agent #5
> looked at the letter, called the FBI, and told [plaintiff] that he could
> not travel.  [Plaintiff's] attorney, Michael Berger, called Agent #5
> on the phone with him, but Agent #5 refused to give any further
> explanation or help to resolve the matter.  Agent #5 did tell
> [plaintiff] that he must talk with the FBI before he travels outside
> the US.  He has called the FBI 15 times since then and he has left
> messages with the secretary there and has been told each time that
> someone will call him back, but nobody ever returns his calls.  The
> last time he called, he left a message to speak with Agent #3 and
> he has gotten no response."

Complaint [1], ¶29.  With respect to the June 4, 2023 incident, plaintiff alleges:

> "30.  On June 4, 2023, [plaintiff] purchased a United Airlines
> ticket to travel to Newark New [J]ersey for business.  He arrived at
> the airport and went to check-in at the United [A]irlines counter
> and 5:30 [p.m.].  There were two ladies working, one white and
> one black.  The black lady, Defendant Jane Doe, took his ID and
> said she had to call the United Airlines main office and left the
> counter.  She came back in 15-20 minutes and told [plaintiff] that
> he was on a 'no fly' list.
>
> 31.  This was the first time, in six (6) years that he has been
> prevented from traveling, that [plaintiff] has been informed that he
> was on a no-fly list.  He asked her why he was on the list, and she
> said she didn't know why, but that TSA had him on the list.  Then
> two (2) defendant [TSA] (TSA #1 & #2) officers appeared, . . .
> along with two defendant Airport Police, #3 & #4 . . . with a police
> dog - who confronted [plaintiff].  TSA #1 told [plaintiff] that he
> was on the no-fly list and that his placement on the list was nothing
> local, that it was high up in Homeland Security/TSA and there was
> nothing they could do about it locally."

Complaint [1], ¶¶ 30-31.

The elements a plaintiff must plead in order to state a claim for conspiracy under either §1985 or §1983 are similar:

> "In order to state a §1983 conspiracy claim, the plaintiff must allege: (1) an agreement between . . . a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. . . . A § 1983 conspiracy claim must be based on an underlying violation of one or more constitutional rights. . . . Similarly, the elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person . . . of equal protection of the laws . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person [is] deprived of any right of a citizen of the United States. . . . In addition, for a §1985(3) claim, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' actions."

Biswas v. City of New York, 973 F.Supp.2d 504, 533 (S.D.N.Y. 2013).  "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."  Gong v. Sarnoff, 2024 WL 35383354, *6 (S.D.N.Y. 2024).  To withstand a motion to dismiss, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Turturro v. Continental Airlines, 334 F.Dupp.2d 383, 397 (S.D.N.Y. 2004).  In addition, plaintiff must "allege facts showing that . . . defendants acted with racial [or other class-based] animus".  Biswas, 973 F.Supp.2d at 534.

Plaintiff's allegations fall short of those requirements.  Plaintiff argues that it is "a fairly reasonable inference that there was a conspiracy afoot and that [United] was a party to that conspiracy" based upon the "fact that the TSA and/or the FBI would tell [United] who then informed their low level employee at the check in counter that the [plaintiff] was on this secret

'No Fly' list".  Plaintiff's Response [29] at 2.  However, he neither cites, nor makes, any factual

allegation that there was, or from which we can infer that there was, a "meeting of the minds" or

an "agreement" between United and either the TSA or the FBI.  Nor does plaintiff identify any

allegation that suggests United took any action in furtherance of the alleged conspiracy.

   As United points out, it was required by law and regulation to participate in

TSA's Secure Flight Program, which required it to send plaintiff's name and other information to

the TSA, which in turn compared that information to the individuals on its watch lists.  *See*

Reply [30] at 5; *see also* 49 C.F.R. §1560.101(b) ("the covered aircraft operator must

electronically transmit [Secure Flight Passenger Data] to TSA, prior to the scheduled departure

of each covered flight").  United is not permitted to print a boarding pass for any traveler that

TSA responds is on one of its watch lists.  49 C.F.R. 105(b)(1) ("[i]f TSA sends a covered

aircraft operator a boarding pass printing result that says the passenger . . . must be placed on

inhibited status, the covered aircraft operator <u>must not issue a boarding pass</u> . . . to that individual

<u>and must not allow that individual to board an aircraft</u>") (emphasis added).

   Given that United was required by law to communicate with the TSA concerning

plaintiff's status on any watch list prior to printing a boarding pass for plaintiff, plaintiff's

allegation that TSA told United that plaintiff was on a watch list does not indicate that United

"entered into an agreement, express or tacit, to achieve the unlawful end."  <u>Turturro</u>, 334

F.Supp.2d at 397.  Nor does plaintiff's allegation that United learned of plaintiff's status on the

"No-Fly" list and communicated this to the plaintiff suggest that United participated in placing

plaintiff on that list.  United's refusal to permit plaintiff to fly after learning that plaintiff was on

the "No-Fly" list also does not support an inference that it participated in any conspiracy.  United

is prohibited by law from permitting an individual on the "No-Fly" list to board an aircraft.  "No

aircraft operator may override a TSA boarding pass printing result that instructs a covered aircraft operator to place a passenger . . . in an inhibited status . . . unless explicitly authorized by the TSA to do so."  49 C.F.R. §1560.105(b)(4). Finally, plaintiff points to no allegation in his Complaint that suggests United, or any of its employees, acted with any discriminatory animus in any of its interactions with plaintiff.


## CONCLUSION

For these reasons, I recommend that the defendants' motions [9, 17, 27] to dismiss the Complaint be granted.  Further, given the similarities between plaintiff's proposed Amended Complaint [31-2] and the Complaint [1], I recommend that plaintiff's motion to amend his Complaint [31] be denied as moot, without prejudice to filing an Amended Complaint that addresses the deficiencies identified herein.

Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by October 8, 2024. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either

certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.

Dated: September 24, 2024

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge